## CENTRAL UNION TELEPHONE COMPANY *v.* RIGGS, ADMINISTRATRIX.

[No. 7,061. Filed May 17, 1910. Rehearing denied December 6, 1910. Transfer denied January 26, 1911.]

1. REMOVAL OF CAUSES.—*Joint Cause of Action against Resident and Nonresident.*—A cause of action brought jointly against a resident and a nonresident cannot be removed to the federal court. p. 46.

2. APPEAL.—*Precipe.—Correction by Trial Court.—Auxiliary Appeal.*—Where a dispute concerning a precipe is decided by the trial court and an auxiliary appeal taken, the Appellate Court, in determining whether the precipe calls for certain parts of the record, may adopt the trial court's decision as to the precipe. p. 47.

3. MASTER AND SERVANT.—*Telegraphs and Telephones.—Defectively Insulated Wires.—Evidence.*—Evidence showing that plaintiff's decedent was engaged in stringing a telephone wire over a trolley wire, that such trolley wire was heavily charged with electricity, that the telephone wire was provided with insulators to prevent the current from injuring the servants, that the insulator on the decedent's side of the trolley was so defective that the current passed over the wire, killing decedent, sustains an action for damages for his death. p. 47.

From Marion Circuit Court (16,222) ; *Henry Clay Allen,* Judge.

Action by Emma Riggs, as administratrix of the estate of Lawrence Riggs, deceased, against the Central Union Telephone Company. From a judgment on a verdict for $5,000 for plaintiff, defendant appeals. *Affirmed.*

*W. B. Mann, David K. Tone* and *Hawkins, Smith & Hawkins,* for appellant.

*R. N. Miller, Bailey & Young* and *Henry N. Spaan,* for appellee.

COMSTOCK, J.—Appellee, as administratrix of the estate of Lawrence Riggs, deceased, instituted this action in the court below against appellant, the Central Union Telephone Company, and the Indianapolis Traction and Terminal Com-

pany, to recover damages alleged to have been occasioned by the death of said Lawrence Riggs, as a result of an electric shock received while handling a guy-wire belonging to appellant.

The complaint consisted of two paragraphs, to which defendants' separate demurrers were overruled and answers filed in general denial. At the close of plaintiff's evidence the court instructed the jury to find for the defendant traction company, and judgment was entered for the traction company in accordance with said instruction. A trial by jury resulted in a verdict in favor of appellee and against appellant for $5,000. With the general verdict answers to interrogatories were returned. Appellant's motion for a new trial was overruled and judgment rendered on the verdict.

The errors assigned and not waived are as follows: The court erred (1) in overruling the verified petition of appellant to remove the cause to the United States Court for the District of Indiana; (2) in overruling appellant's motion for a *venire de novo;* (3) in overruling appellant's motion for a new trial.

The first error discussed is the action of the court in overruling appellant's petition to remove said cause to the federal court. The motion was upon the grounds that

1. the Central Union Telephone Company was a citizen and resident of the State of Illinois; that defendant Indianapolis Traction and Terminal Company and plaintiff were citizens and residents of the State of Indiana; that no cause of action was stated against defendant traction company, and that the amount in controversy exceeded $2,000. In this action of the court there was no error. *Louisville, etc., R. Co.* v. *Gollihur* (1907), 40 Ind. App. 480.

The complaint charges an act of negligence on the part of each of the defendants as a joint cause of action, a joint tort resulting in the death of appellee's decedent. *Louisville, etc., R. Co.* v. *Gollihur, supra,* and cases cited; *Powers*

v. *Chesapeake, etc., R. Co.* (1898), 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; *Louisville, etc., R. Co.* v. *Wangelin* (1890), 132 U. S. 601, 10 Sup. Ct. 203, 33 L. Ed. 474; *Plymouth Gold Mining Co.* v. *Amador, etc., Canal Co.* (1886), 118 U. S. 264, 6 Sup. Ct. 1034, 30 L. Ed. 232.

The court did not err in its ruling on appellant's motion for a *venire de novo.*

The controlling question, viz., the sufficiency of the evidence to sustain the verdict, is presented by the motion for a new trial. It is earnestly argued that said motion 2. was not called for in the precipe, and therefore no question sought to be raised by said motion is presented. The facts relating to the precipe, upon which the record comes before us, have been passed upon by the trial court and brought to this court by an auxiliary appeal. Upon the finding and judgment of the trial court we hold that the record presents the questions sought to be raised.

The negligence charged in the complaint is in part as follows: "Said defendant telephone company carelessly and negligently constructed said guy wire, which was at- 3. tached to the top of said pole on the south side of said Michigan street and with the deadman in the ground, in this, that it, the said telephone company had carelessly and negligently failed, refused and neglected to place a strain insulator (commonly called a breaker) in said guy-wire, running from the top of said post to said deadman, so as to break any current of electricity traveling along said wire; * * * that a strain insulator, commonly called a breaker, made of metal, mica and micalite, placed in said guy-wire between said post and said deadman, would have broken any current of electricity passing along said wire; that it was the duty of the telephone company, which it owed to plaintiff's decedent, so to place a strain insulator in said guy-wire as to make the place in which he was directed to work reasonably safe, as hereinafter described; * * * that said wire cable which was to be strung and

stretched above said trolley-wire, and between the two said poles in opposite sides of said Michigan street, was supplied with two strain insulators, commonly called breakers, which were so placed in said wire that when said wire was in final position and fastened to both of said poles, one of said strain insulators or breakers would be between said pole on the north side of said street and the trolley-wire nearest to it, and the other insulator would be between said trolley-wire and the post upon which this decedent was stationed; that said strain insulators were for the purpose and intention of turning aside any electric current that might reach said wire and keep it from reaching either of said poles as hereinbefore described; that said insulators, when in proper position, would be about three or four feet from said pole; that said strain insulator between this decedent and the trolley-wire was carelessly and negligently constructed, so that it would not break a current of electricity passing through said guy-wire, and imperfect for the purpose to which it was assigned; * * * that by reason of the carelessness and negligence of defendant telephone company in constructing said guy-wire running from said post to said deadman, and by reason of the carelessness and negligence of the telephone company in placing, or causing to be placed, in said wire running between said two poles the defective and imperfect strain insulator or breaker, and by reason of all which a current of electricity of about 2,000 volts and of great amperage and power was allowed to pass along said wire this decedent was holding, by reason of said defective strain insulator's failing to stop said current and it was transmitted through the body of this decedent, who was in direct connection with the ground by reason of said defective guy-wire as heretofore described, which ran from said post to said deadman, and thereby and by reason of the negligence and carelessness of these defendants plaintiff's decedent was instantly killed.''

The general verdict finds these allegations to be true. The facts specifically found are not in conflict with the general verdict, so that the remaining question is whether there is any evidence fairly tending to support it. It is shown that appellant was placing a guy-wire from a telephone post or guy-stub on the south side of West Michigan street across and over the wires of the Indianapolis Traction and Terminal Company to a pole on the north side of said street. The wire had been prepared by putting in two insulators to break the current of electricity that might otherwise pass along the wire. It is shown that if the insulators were in good condition they would break a voltage of from 550 to 700 volts, and that the amount of electricity carried by the Indianapolis Traction and Terminal Company at this point was about 500 volts. Decedent, Lawrence Riggs, was on the south pole, and was passing the wire through his hands as it passed over the trolley-wire going to the north. The north end of the wire had been bent into a loop in which a small hand line was tied and one Arbuckle was on the telephone pole on the north side of the street pulling the wire across over the trolley-wires to the north side of the street. The wire on the telephone pole was to be fastened higher than the top of the guy-stub on the south side. The wire was pulled across until the end of the loop was from two to three feet from the pole where it was to be attached. At that time it swung loosely and sagged on the south of the south trolley-wire. The wire on the north was loose. This wire was pulled across until the south insulator had passed north of the decedent, a distance of two and one-half or three feet, at which time decedent let loose of the rope by which he was handling this wire and took hold of it with his hands. He was leaning against another wire attached to the top of the guy-stub, stretched in a southern direction and fastened to the deadman in the ground. When he took hold of the wire south of the south insulator, and while leaning

against the wire grounded to the deadman, he received a shock of electricity which passed through his body killing him almost instantly.

Immediately after the accident the guy-wire with the south insulator was cut and fell to the ground. When so cut it was flashing all around the insulator. This indicated that there had been arcing across the insulator. Its outside was badly burned. If it had not been cut it would have been finally consumed. Measurements were testified to. Photographs and blueprints were introduced in evidence, designed to represent the location of the decedent with reference to the insulators, the length of the wire and distances between the various locations involved and the general situation and conditions at the place of the accident. One witness testified that the south insulator was without defect. This testimony was discredited by the testimony of other witnesses, who testified that he had previously stated that it was defective. The evidence was undisputed that there was no strain insulator in the guy-wire running from the top of the pole on the south side of said street to the deadman, and that if there had been it would have prevented a circuit and thus prevented the accident.

We cannot say that the verdict was without support in the evidence.

Judgment affirmed. The clerk is directed to tax the costs of the auxiliary appeal to appellee.